UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

HOLGER ALBERTO PEREZ-
KOCHER,

        Plaintiff,

v.                                                                                Case No: 6:20-cv-2357-GKS-EJK

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

### REPORT AND RECOMMENDATION

This cause comes before the Court on Defendant's Motion to Dismiss (the "Motion"), filed June 3, 2021. (Doc. 15.) Defendant has also filed a notice of supplemental authority (Doc. 24) and a supplemental brief (Doc. 32). Plaintiff has filed a response in opposition (Doc. 20), a notice of supplemental authority (Doc. 29), and a supplemental brief (Doc. 34). Therefore, the Motion is ripe for review. Upon consideration, I respectfully recommend that the Motion be granted in part.

### I.     BACKGROUND

Plaintiff appeals the Acting Commissioner's ("Commissioner") decision denying his application for Supplemental Security Income benefits. (Doc. 1.) Plaintiff asserts both a traditional challenge to the Commissioner's lack-of-disability determination and a constitutional claim. (*Id.*) In the constitutional claim, Plaintiff alleges, "The Social Security Administration's leadership by a single individual

removable only for inefficiency, neglect, or malfeasance violates the United States Constitution's separation of powers. There is no valid Commissioner of Social Security." (*Id.* ¶ 7.) Plaintiff further alleges that because "there is no valid Commissioner of Social Security . . . the Administrative Law Judge was not properly appointed, and her decision is therefore void." (*Id.* ¶ 9.)

The Commissioner acknowledges that Plaintiff has standing to assert his traditional claim but seeks the dismissal of Plaintiff's constitutional claim. (Docs. 15 at 2; 32 at 3.)

## II. STANDARD

### A. Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction," and thus may adjudicate only claims the Constitution or Congress gives them jurisdiction to determine. *United States v. Rivera*, 613 F.3d 1046, 1049 (11th Cir. 2010) (internal quotations and citations omitted). Concomitantly, the class of persons authorized to bring suit is limited by constitutional and prudential principles of standing. *See Warth v. Seldin*, 422 U.S. 490, 500–01 (1975). "[S]tanding is a threshold issue in every case[.]" *Board of County Commissioners of Sweetwater County v. Geringer*, 297 F.3d 1108, 1111 (10th Cir. 2002) (citation and internal quotation marks omitted). If a putative plaintiff lacks standing, the court is without subject matter jurisdiction to consider her claims. *See, e.g.*, *Warth*, 422 U.S. at 500–01; *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 215 (1974).

The Court must dismiss a complaint for lack of subject matter jurisdiction "'when the court lacks the statutory or constitutional power to adjudicate the case.'" *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). Motions to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) may attack jurisdiction facially or factually. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003). Here, the Commissioner's Motion presents a facial attack, that is, it questions the sufficiency of the Complaint, the allegations of which I must therefore accept as true. *Id.* Once challenged, Plaintiff bears the burden to demonstrate he has standing to bring suit. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

### B. Rule 12(b)(6)

In deciding a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and view them in the light most favorable to Plaintiff. *Bedasee v. Fremont Investment & Loan*, No. 2:09-cv-111-FtM-29SPC, 2010 WL 98996 at *1 (M.D. Fla. Jan. 6, 2010) (citing *Erickson v. Pardus*, 551 U.S. 89, 127 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002)). "To survive dismissal, the complaint's allegations must plausibly suggest that the [plaintiff] has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed." *James River Insurance Co. v. Ground Down Engineering, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008) (citing *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 555–56 (2007)). Dismissal is warranted under Rule 12(b)(6) if, assuming the truth of the factual allegations of plaintiff's complaint, there is a dispositive legal issue which precludes relief. *Bedasee*, 2010 WL 98996 at *1 (citing *Neitzke v. Williams*, 490 U.S. 319, 326 (1989)); *Brown v. Crawford County*, 960 F.2d 1002, 1009–10 (11th Cir.1992)).

### C. Standard in This Case

The Eleventh Circuit "ha[s] cautioned . . . that the district court should only rely on Rule 12(b)(1) if the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action." *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003) (citation, alterations, and internal quotation marks omitted). When the jurisdictional and merits inquiries are intertwined, "the proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981)[1]. "This refusal to treat indirect attacks on the merits as Rule 12(b)(1) motions provides, moreover, a greater level of protection to the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6) (for failure to state a claim upon which relief can be granted) or Rule 56 (summary judgment)—both of which place great restrictions on the district court's discretion." *Id.*

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Upon review of the Motion, the issues of appropriate relief, compensability, and ALJ ratification are intertwined with the merits and will be treated as a Rule 12(b)(6) challenge. However, the issue of redressability is solely a jurisdictional issue and will be reviewed as a Rule 12(b)(1) facial attack.

### III.   DISCUSSION

Plaintiff asserts a constitutional challenge to the Commissioner's authority based on the Supreme Court case *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183, 2197 (2020), and argues that the statutory limitations in Section 902(a)(3), on the removal of the Social Security Commissioner, violate the Separation of Powers Clause of the Constitution. (*See* Doc. 20 at 1–2.) However, relying on *Collins v. Yellen*, 141 S. Ct. 1761 (2021), the Commissioner contends that Plaintiff cannot establish compensability to state a claim for relief and that Plaintiff lacks standing to assert his constitutional claim because he cannot establish redressability.[2] (Docs. 15 at 5; 32 at 5.) Plaintiff responds that he has satisfied the requirements of 42 U.S.C. § 405(g) for judicial review of his constitutional claim. (Docs. 20, 34.)

In *Selia Law*, the Supreme Court considered whether the structure of the Consumer Financial Protection Bureau ("CFPB"), and specifically its limits on the President's removal powers, violated the Constitution's Separation of Powers Clause.

---

[2] The Motion to Dismiss also challenges Plaintiff's standing based on a lack of traceability; however, the Commissioner conceded this issue in the supplemental brief because the Supreme Court specifically rejected the traceability argument raised by the Commissioner. (Docs. 15 at 6–11; 32 at 2–3); *Collins*, 141 S. Ct. at 1779.

140 S. Ct. at 2191. The CFPB investigated a law firm, Seila Law, for violating the law while providing debt-relief services. *Id.* at 2191, 2194. The CFPB issued a civil investigative demand ("CID"), which sought information and documents related to the law firm's practices. *Id.* at 2194. However, Seila Law refused to comply and the CFPB filed a petition in district court to enforce the demand. *Id.* As justification for its noncompliance, Seila Law argued that the structure of the CFPB violated the constitutional mandate of separation of powers. *Id.* Specifically, Seila Law noted that the CFPB, an agency under the auspices of the Executive Branch, was headed by a single individual who could be removed by the President only for "inefficiency, neglect, or malfeasance in office." 12 U.S.C. § 5491(c)(3). *See Seila Law*, 140 S. Ct. at 2149. Seila Law argued that this provision violated Article II of the Constitution, under which the executive power belongs wholly and exclusively to the President. *Seila Law*, 140 S. Ct. at 2197. Although the President may delegate his authority to lesser executive officers to assist him in discharging the responsibilities of his office, because he retains "ultimate responsibility" for use of the executive power, he has an "active obligation to supervise" those officers. *See id.* at 2203 (citation and internal quotation marks omitted).

The Court agreed with Seila Law that this constitutional responsibility was thwarted by limitations on the President's ability to remove the Director of the CFPB. *Id.* at 2203.

> The CFPB's single-Director structure contravenes this carefully calibrated system by vesting significant governmental power in the hands of a single individual accountable to no one. The Director is neither elected by the people nor meaningfully controlled (through the threat of removal) by someone who is.... Yet the Director may *unilaterally*, without meaningful supervision, issue final regulations, oversee adjudications, set enforcement priorities, initiate prosecutions, and determine what penalties to impose on private parties. With no colleagues to persuade, and no boss or electorate looking over her shoulder, the Director may dictate and enforce policy for a vital segment of the economy affecting millions of Americans.

*Id.* at 2203–04. In short, "[t]he CFPB Director's insulation from removal by an accountable President . . . render[s] the agency's structure unconstitutional." *Id.* at 2204.

The Supreme Court further cemented this understanding of the President's removal powers this past term, finding "[a] straightforward application of our reasoning in *Seila Law*" likewise rendered unconstitutional the statutory protection from removal except for cause that was afforded to the Director of the Federal Housing Finance Authority ("FHFA"). *Collins v. Yellen*, 141 S. Ct. 1761, 1784 (2021). Thus, the Court held that the provision limiting the President to removing the director of the FHFA only for cause violated the separation of powers. *Id.* at 1783 (holding that "*Seila Law* is all but dispositive").

Applying the holdings in *Seila Law* and *Collins* here makes it clear that the provision for removal of the Commissioner of Social Security, 41 U.S.C. § 902(a)(3), violates the Separation of Powers Clause. The Commissioner, a single officer at the head of an administrative agency, is removable only for cause. *See* 41 U.S.C. § 902(a)(3). This statutory clause suffers from the same defect as the removal provisions

at issue in *Seila Law* and *Collins*. *See Seila Law*, 140 S. Ct. at 2197; *Collins*, 141 S. Ct. at 1783; *see also* Office of Legal Counsel, Constitutionality of the Commissioner of Social Security's Tenure Protection, 2021 WL 2981542, at *7 (July 8, 2021); *see, e.g.*, *Tosland v. Comm'r of Soc. Sec.*, No. 3:20-cv-06085-JRC, 2021 WL 5356721, at *3 (W.D. Wash. Nov. 17, 2021) (finding that § 902(a)(3) violates separation of powers); *Young v. Comm'r of Soc. Sec.*, No. C21-5207-BAT, 2021 WL 5177363, at *5 (W.D. Wash. Nov. 8, 2021) (finding same); *Tafoya v. Kijakazi*, No. 21-CV-00871-REB, 2021 WL 3269640, at *3 (D. Colo. July 29, 2021) (acknowledging that the Social Security Administration suffered from the same constitutional defect as *Collins*).

### A. Redressability

Standing requires a plaintiff to show "an injury to himself that is likely to be redressed by a favorable decision." *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 38 (1976). Here, the Commissioner contends that Plaintiff cannot establish redressability because "a remand predicated on *Seila Law* would result in a new hearing no different than the last." (Doc. 15 at 11.) The Commissioner further argues that a judgment remanding to the agency "on [Plaintiff's] constitutional contention would not change anything relevant to the decision on his claim." (*Id.* at 12.) Plaintiff disagrees, noting that a judgment remanding his case would allow "a properly appointed ALJ who had valid legal authority to decide his case to apply the proper legal standards to his disability claim." (Doc. 20 at 17.)

The Commissioner's argument misstates the nature of Plaintiff's alleged injury, which resides not in the substantive determination *per se*, but in the fact that the decision was issued in the absence of constitutional authority. Thus, in a case such as this, Plaintiff "is not required to prove that the Government's course of conduct would have been different in a 'counterfactual world' in which the Government had acted with constitutional authority." *Seila Law*, 140 S. Ct. at 2196 (internal citations omitted). It is sufficient if "a decision in [plaintiff's] favor could [ ] lead to the award of at least some of the relief [he] seek[s]." *Collins*, 141 S. Ct. at 1779. Thus, Plaintiff does not have to show that the decision would be different upon remand to satisfy redressability; it is enough that remand *could* lead to a different decision. Additionally, given the guidance in *Seila Law* and its implicit warning in *Collins* not to conflate the issue of "entitlement to relief" with redressability for purposes of standing, *see Collins*, 141 S. Ct. at 1788 n.24, I find here that Plaintiff has established redressability for purposes of standing, *see Dante v. Saul*, No. civ-20-0702-KBM, 2021 WL 2936576, at *10 (D.N.M. July 13, 2021). On that basis, I recommend that the Court find that Plaintiff has established standing to bring the constitutional challenge.

### B. Appropriate Relief and Section 9203(a)(3)

In his Complaint and response, Plaintiff appears to contend that, because the ALJ who decided his claim served under authority delegated from a Commissioner who was subject to the unconstitutional removal position, the decision of his claim absolutely violates the separation of powers, and thus his case must be remanded. (*See*

Docs. 1 ¶ C; 20.) As the Commissioner notes, that interpretation is incorrect, and the *Collins* Court specifically rejected this argument. *Collins*, 141 S. Ct. at 1788.

In *Collins*, the Supreme Court rejected the contention that an invalid removal provision rendered the FHFA's actions void from the outset. *Id.* at 1788. The Supreme Court stated there was "no reason to hold that the [action] must be completely undone." *Id.* The *Collins* Court further stated, "Although the statute unconstitutionally limited the President's authority to remove the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA [challenged on appeal] as void." *Id.* at 1787. Accordingly, Plaintiff's contention that he is entitled to a new hearing due to § 9203(a)(3)'s removal clause is not supported by either *Seila* or *Collins*. *See, e.g.*, *Tosland*, 2021 WL 5356721, at *4 (finding same). Therefore, I find that Plaintiff cannot establish that he is entitled to remand on this issue, and I recommend that the Court find that Plaintiff has failed to state a claim upon which relief can be granted.

## C. Compensability

The Commissioner further argues that under *Collins*, Plaintiff "cannot show that the removal restriction itself 'inflict[ed] compensable harm' on him" and thus Plaintiff's separation of powers claim fails. (Doc. 32 at 5–6) (citing *Collins*, 141 S. Ct. at 1789.) Plaintiff disagrees, contending that the Commissioner "incorrectly asserts that *Collins* requires [him] to prove direct harm." (Doc. 34 at 3.) The undersigned

agrees with the Commissioner.

In *Collins*, the Court found it was "possible for an unconstitutional provision to inflict compensable harm" and remanded to the lower court to determine whether the removal provision "inflicted harm." 141 S. Ct. at 1788–89. In that case, the action challenged by plaintiffs was the directors' adoption and implementation of an amendment (the "Third Amendment") to certain financial agreements that "materially changed the nature of the agreements" and resulted in the companies in which plaintiffs were shareholders transferring to the U.S. Treasury "at least $124 billion dollars more than the companies would have had to pay" under the prior form of the agreements. *Id.* at 1774. The Third Amendment was not subject to full judicial review, *id.* at 1775–76, 1785, and the Supreme Court found that fact-finding by the lower courts was required in order to determine whether plaintiffs suffered harm directly as a result of the FHFA director's unconstitutional tenure protection. *See id.* at 1789.

By contrast, in this case, the action challenged by Plaintiff is the ALJ's decision denying benefits. Plaintiff has alleged no direct action by former Commissioner Saul himself, and no involvement—or even awareness—by the former President in the ALJ's decision. *Cf. Id.* at 1802 (Kagan, J. concurring) ("[G]iven the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone . . . . When an agency decision would not capture a President's attention, his removal authority could not make a difference."). Plaintiff has made no clear allegation that Acting Commissioner Saul's unconstitutional tenure

- 11 -

resulted in compensable harm to him. The ALJ's decision here was based upon an uncontested factual record and the application of established law, including case law, which generally cannot be changed by the Commissioner. Therefore, I recommend that the Court find that Plaintiff has not demonstrated a compensable claim with regard to the constitutional issue and has failed to state a claim upon which relief can be granted. *See, e.g.*, *Ross v. Comm'r of Soc. Sec.*, No. C20-6176-MLP, 2021 WL 5356719, at *6–7 (W.D. Wash. Nov. 16, 2021) (finding that "Plaintiff has not alleged any compensable harm that requires reversal of the ALJ's decision denying benefits" based on Commissioner Saul's unconstitutional tenure); *Rivera-Herrera v. Comm'r of Soc. Sec.*, No. 1:20-cv-01326-GSA, 2021 WL 5450230, at *7 (E.D. Cal. Nov. 22, 2021) (finding plaintiff identified no compensable harm suffered by virtue of his disability claim being adjudicated during Commissioner Saul's tenure).

### D. Ratification of the ALJ's Appointment

Lastly, relying on *Collins*, Defendant argues, in the alternative, that the removal restriction that Plaintiff challenges has no relevance to his claim because the ALJ who heard Plaintiff's case had his original appointment ratified by then Acting-Commissioner Nancy Berryhill, who was removable at will from her "acting" role and thus not subject to § 902(a)(3). (Doc. 32 at 4.) Plaintiff responds that specific information about the appointment of the ALJ who decided Plaintiff's case is not publicly available, and that "if this particular ALJ was appointed by Andrew Saul, that appointment is not valid and the ALJ did not have any authority to render a decision in [Plaintiff]'s case." (Doc. 34 at 2.)

In *Collins*, the Supreme Court addressed the removal of an Acting Director and found that "if the statute does not restrict the removal of an Acting Director, any harm resulting from actions taken under an Acting Director would not be attributable to a constitutional violation." *Collins*, 141 S. Ct. at 1781. Section 902(a)(3) restricts only the removal of the Commissioner and does not reference an acting Commissioner. As such, the Acting Commissioner's appointment was constitutional. *See id.* at 1782 ("When a statute does not limit the President's power to remove an agency head, we generally presume that the officer serves at the President's pleasure") (finding that the Recovery Act's removal statute does not extend to an Acting Director). Thus, Acting Commissioner Nancy Berryhill was not subject to the unconstitutional removal provision on which Plaintiff bases his claim, and any ratification of an ALJ by Nancy Berryhill would make that appointment constitutional. *Boger v. Kijakazi*, No. 1:20-cv-331, 2021 WL 5023141, at *n.4 (W.D.N.C. Oct. 28, 2021) (unpublished) ("Indeed, [the p]laintiff's constitutional 'removal restriction' argument is likely not even applicable to this case because [the] ALJ [in question] was appointed by an Acting Commissioner of Social Security who could be removed from that office at the President's discretion.").

"[O]n July 16, 2018 the Acting Commissioner of Social Security[, Nancy Berryhill,] ratified the appointments [of the Social Security Administration's] ALJs and approved those appointments as her own." 84 Fed. Reg. 9583 (2019). Therefore, even if the ALJ was appointed by Commissioner Saul, that appointment was later ratified by the Acting Commissioner, who was not subject to the unconstitutional

structure.[3] Therefore, the ALJ's appointment, as ratified, is valid. Furthermore, the second decision in Plaintiff's case was issued on April 14, 2020 (Tr. 72), well after the date of ratification of the ALJ. Thus, I find that Section 902(a)(3)—the unconstitutional removal provision—did not affect Plaintiff's case. *See Tyndall v. Kijakazi*, No. 8:21-cv-14, 2021 WL 5302141, at *18 (D. Neb. Nov. 15, 2021) ("The ALJ who decided Plaintiff's case was appointed by then-Acting Commissioner Berryhill, who could be removed from that office at the President's discretion."). Accordingly, I recommend that the Court find that Plaintiff has failed to state a claim upon which relief may be granted.

## IV.  RECOMMENDATION

Upon consideration of the foregoing, I respectfully recommend the Court:

1. **GRANT** the Commissioner's Motion (Doc. 15) in part, as to its challenge pursuant to Rule 12(b)(6).

2. **DISMISS** Plaintiff's constitutional claim for failure to state a claim upon which relief may be granted.

3. **DENY** the Commissioner's Motion as to all else.

---

[3] ALJ Kathleen Eiler issued the decision in Plaintiff's case. (Tr. 74.) She has served as an ALJ in Florida since at least January 2017. *See Gammon v. Comm'r of Soc. Sec.*, No. 6:17-cv-904-ORL-37-GJK, 2018 WL 1136111, at *2 (M.D. Fla. Feb. 6, 2018), *report and recommendation adopted*, No. 617CV904ORL37GJK, 2018 WL 1069462 (M.D. Fla. Feb. 26, 2018) (noting that ALJ Eiler conducted a hearing for the plaintiff's case on January 11, 2017). Thus, to the extent Plaintiff argues that the ALJ was appointed by Commissioner Saul and "did not have authority to render a decision in [his] case" (Doc. 34 at 2), that argument fails as ALJ Eiler was appointed at least two years before Commissioner Saul took office in 2019.

## NOTICE TO PARTIES

The party has fourteen days from the date the party is served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Recommended in Orlando, Florida on November 23, 2021.

EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record